IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LESLIE E. MARTIN, III,

                       Appellant,

  v.

JEANNE AWVE and MARK HARRING,

                       Appellees.

OPINION & ORDER

16-cv-40-jdp

---

     Appellant Leslie E. Martin, III appeals two final decisions by the United States Bankruptcy Court for the Western District of Wisconsin. One decision granted appellee Jeanne Awve relief from the automatic bankruptcy stay so that she could enforce her rights under a judgment of divorce. Dkt. 1-2. The other dismissed Martin's case for lack of good faith. Dkt. 1-1.

     The bankruptcy court did not err when it granted Awve relief from the automatic stay; the court will affirm that decision. But because the bankruptcy court dismissed Martin's case without notice, the court will reverse that decision and remand the case so that Martin has the chance to convince the bankruptcy court that his petition is in good faith.

BACKGROUND

     Martin and Awve are ex-spouses, and some background on their divorce proceedings is necessary to understand the issues in Martin's bankruptcy. On January 18, 2013, the divorce court entered findings of fact, conclusions of law, and judgment of divorce. The order provided that "[e]ach party is awarded 100% interest in the retirement and bank accounts in his or her own name." Dkt. 4-1, at 51. The order also provided that Martin owed Awve "an

equalization payment of $116,695 by February 21, 2013." *Id.* This initial order provided that Awve could choose to receive the payment from Martin's retirement account. *Id.* But on October 21, 2014, the divorce court entered an amended order, which provided, in relevant part:

> Respondent [Awve] was previously awarded the right to chose [sic] whether she wants payment via QDRO from Petitioner's [Martin's] retirement assets or cash. Exhibit A delegates the portions to be satisfied by cash payment and a portion via QDRO: that value as of the date of the divorce, to be assigned to her via QDRO, with all gains/losses since the date of divorce.
>
> All prior orders not inconsistent with the terms herein shall remain in full force and effect.

*Id.* at 58. Apparently, based on state court records, Martin declined to make the QDRO transfer to Awve, and Awve tried to enforce the QDRO through the divorce court.

On July 8, 2015, Martin filed a chapter 13 voluntary bankruptcy petition. B. Dkt. 1.[1] The next day, July 9, 2015, the divorce court entered an oral ruling regarding the relationship between the divorce proceedings and Martins' bankruptcy case. B. Dkt. 59, at 6-13. The divorce court determined that the divorce proceedings were subject to the automatic bankruptcy stay. The court also commented on the parties' retirement accounts. The court stated that "the money that was ordered paid by Mr. Martin is not subject to the bankruptcy estate, and I think ultimately, that will be the finding of the bankruptcy court. . . . This obligation—this property belonged to Ms. Martin as of February of 2013." *Id.* at 10. The court also noted that "the bankruptcy court is more than competent to make that decision. If they don't, then you can come back to this Court. And if there is a discharge of that obligation in this divorce decree, then I am powerless to go further." *Id.* The divorce court's

---

[1] All "B. Dkt." citations refer to the bankruptcy court docket.

comments are not dispositive of the issues that were before the bankruptcy court, although if there were ambiguity in the meaning of the divorce court orders, these comments would be informative.

Martin filed his first chapter 13 plan on July 30, 2015. B. Dkt. 15. Awve objected, B. Dkt. 27, and the bankruptcy court scheduled a preliminary hearing on confirmation of the plan. Before the preliminary hearing, Martin filed an amended plan, soon followed by a second amended plan. B. Dkt. 30 and B. Dkt. 35. Awve objected, B. Dkt. 38, as did the trustee, B. Dkt. 37. The bankruptcy court scheduled a final hearing on confirmation of the plan for January 15, 2016. B. Dkt. 47.

Several weeks before the final hearing, Awve moved for relief from the automatic bankruptcy stay. B. Dkt. 55. Awve sought leave to return to the divorce court to compel Martin to "execute a Broker/Dealer form, or any other such document as required by H.T.L.F. Investment Services to memorialize that Court's previous award and assignment of funds held in the Debtor's name at H.T.L.F. Investment Services." *Id.* at 1. In other words, Awve wanted the opportunity to secure funds from Martin's retirement account pursuant to the divorce court's division of property orders. Martin objected, arguing that Awve's claim was unsecured: the divorce court did not award Awve a vested interest in Martin's individual retirement account, just a right to payment that could be discharged in bankruptcy. Martin then filed a third amended chapter 13 plan. B. Dkt. 57.

On January 4, 2016, the bankruptcy court held a preliminary hearing on Awve's motion for relief from the automatic stay. Dkt. 3-1. At the hearing, the bankruptcy court granted Awve's motion—"per reasoning of *Bigelow v. Brown*, 168 B.R. 331"—and dismissed Martin's case as "filed in lack of good faith per *In re Schaitz*." *Id.* at 5. The court reasoned that

"[t]his is clearly a case in which the debtor is seeking to avoid paying Ms. Awve, and it is not a case in which it was directed to the general payment of creditors." *Id.* The bankruptcy court issued a short written order the following day, noting that it had dismissed Martin's case after finding "that no Plan meeting the requirements of Chapter 13 of Title 11, United States Code has been presented: and further finding that no cause has been shown why this case should not be dismissed." Dkt. 1-1.

The court has subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

## ANALYSIS

"In a bankruptcy appeal, issues of law are reviewed de novo; factual findings may be set aside only if they are clearly erroneous." *In re Kelly*, 392 B.R. 750, 754 (W.D. Wis. 2007) (citing Fed. R. Bankr. P. 8013). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Martin appeals two final decisions by the bankruptcy court: (1) the order granting Awve relief from the automatic stay; and (2) the order dismissing the case for lack of good faith or for failure to prosecute, "because no Plan has been confirmed." Dkt. 1-1 and Dkt. 1-2. Both are final decisions: the order granting relief from the automatic stay was a final order on a discrete issue, and the order dismissing the petition disposed of the case in its entirety. *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 n.1 (7th Cir. 2003) ("All courts

4

that have considered the matter agree that an order lifting the automatic stay is a final judgment. . . . We see no reason to disagree with the other circuits.").

**A. Order granting relief from the automatic stay**

A bankruptcy court may grant relief from the automatic stay, on request of a party in interest and after notice and a hearing, "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). District courts may overturn decisions to lift the automatic stay "only upon a showing that the bankruptcy court abused its discretion." *Matter of Apex Pharm., Inc.*, 203 B.R. 432, 439 (N.D. Ind. 1996) (citing *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982)).

As mentioned above, the bankruptcy court granted Awve's motion pursuant to *In re Brown (Brown v. Bigelow)*, 168 B.R. 331 (Bankr. N.D. Ill. 1994). In *Brown*, the bankruptcy court determined whether "the division of the Debtor's pension under the state court decree gave rise to a separate property interest in the pension in favor of the Plaintiff or merely created a debt owing to the Plaintiff." 168 B.R. at 334. The court confronted the issue that was before the bankruptcy court here. In *Brown*, the divorce court had awarded the debtor's ex-spouse 50 percent of the present value of the debtor's pension plan; the judgment provided that "[a]n appropriate Qualified Domestic Relations Order ('QDRO') shall be entered in conjunction with this Judgment." *Id.* at 332. Applying state law, the bankruptcy court determined that upon entry of the divorce court order, all right to half of the pension plan vested in the debtor's ex-spouse, and, as a result, "her interest in the pension never became part of the Debtor's bankruptcy estate," and her efforts to recover her property were never subject to the automatic stay. *Id.* at 335-36. The court denied the motion for relief from the automatic stay as moot. *Id.* at 336.

*Brown* is closely on point, with two qualifications. First, *Brown* applied Illinois law; this case would have been governed by Wisconsin law. But this qualification is ultimately immaterial: the bankruptcy court would have reached the same result had it applied Wisconsin law. In *Dewey v. Dewey*, 188 Wis. 2d 271, 525 N.W.2d 85 (Ct. App. 1994), Violet Dewey received a one-half interest in David Dewey's pension plan, pursuant to a property settlement reached during the couple's divorce proceedings. 525 N.W.2d at 86. Following the divorce proceedings, David filed for bankruptcy, and the bankruptcy court discharged David's prepetition debts. *Id.* David then refused to sign the QDRO, contending that Violet's interest in the pension plan had been discharged. *Id.* Citing *Brown*, the court ultimately held that "a division of a pension plan pursuant to a divorce decree does not create an obligation in the employee-spouse but creates two separate property interests that become vested at the moment the decree is entered." *Id.* at 87.

Martin contends that a second qualification distinguishes his case from *Brown* and *Dewey*. He contends that the divorce court awarded him a 100 percent interest in his retirement account, giving Awve a mere right to receive payment. Because, Martin argues, Awve does not have a vested interest in his retirement account, his payment obligation to her is dischargeable.

Martin contends that his position is supported by *Spankowski v. Spankowski*, 172 Wis. 2d 285, 493 N.W.2d 737 (Ct. App. 1992). In that case, the divorce court ordered David Spankowski to pay Susan Spankowski one-half of his Wisconsin state pension. Under the law in effect at the time, David's state pension plan could not be divided by QDRO. So he retained a 100 percent interest in the account, although the divorce court ordered him to pay Susan half the value of the account. His "debt" to Susan was then discharged in a subsequent

6

bankruptcy; Susan had notice of the bankruptcy but did not contest it. But after the bankruptcy, Susan sought to amend the divorce judgment in state court. The circuit court granted the modification, but the court of appeals reversed, holding that the state court did not have the authority to undo the decision of the federal bankruptcy court. The primary basis for the court of appeals' decision in *Spankowski* was respect for the bankruptcy court's determination, which Susan had elected not to challenge. That is simply not the question the bankruptcy court faced here. (And under *Spankowski*, Awve could have sought a further modification of the divorce judgment while Martin's bankruptcy was pending.)

Martin relies, at bottom, on the idea that the divorce court gave Awve only a right to payment, rather than a right to Martin's property. Martin cites some statements by the divorce court that Martin's obligation had been "ordered paid" long before the bankruptcy. Dkt. 6, at 10. But Martin's reading of the divorce court's orders is strained, particularly because one of the expressly stated purposes of the amended order was to clarify "that the court intended the property division to be non-dischargeable in bankruptcy." Dkt. 4-1, at 55. It is clear under both *Brown* and *Dewey* that a party to a divorce can have a vested interest in a property division, even if the other spouse retains bare legal title and the ordered payment has yet to be made. *Brown*, 168 B.R. at 335; *Dewey*, 525 N.W.2d at 88. There is no practical difference between an order awarding an ex-wife 50 percent of her ex-husband's pension plan, to be paid via QDRO, and an order awarding an ex-wife a fixed sum of money to be paid via QDRO.[2]

---

[2] Martin is correct that technically, a QDRO would not have been necessary to effectuate the transfer of an interest in an IRA because an IRA is not governed by ERISA. But some form of family court order would have been appropriate to ensure the beneficial tax treatment of the IRA.

bankruptcy; Susan had notice of the bankruptcy but did not contest it. But after the bankruptcy, Susan sought to amend the divorce judgment in state court. The circuit court granted the modification, but the court of appeals reversed, holding that the state court did not have the authority to undo the decision of the federal bankruptcy court. The primary basis for the court of appeals' decision in *Spankowski* was respect for the bankruptcy court's determination, which Susan had elected not to challenge. That is simply not the question the bankruptcy court faced here. (And under *Spankowski*, Awve could have sought a further modification of the divorce judgment while Martin's bankruptcy was pending.)

Martin relies, at bottom, on the idea that the divorce court gave Awve only a right to payment, rather than a right to Martin's property. Martin cites some statements by the divorce court that Martin's obligation had been "ordered paid" long before the bankruptcy. Dkt. 6, at 10. But Martin's reading of the divorce court's orders is strained, particularly because one of the expressly stated purposes of the amended order was to clarify "that the court intended the property division to be non-dischargeable in bankruptcy." Dkt. 4-1, at 55. It is clear under both *Brown* and *Dewey* that a party to a divorce can have a vested interest in a property division, even if the other spouse retains bare legal title and the ordered payment has yet to be made. *Brown*, 168 B.R. at 335; *Dewey*, 525 N.W.2d at 88. There is no practical difference between an order awarding an ex-wife 50 percent of her ex-husband's pension plan, to be paid via QDRO, and an order awarding an ex-wife a fixed sum of money to be paid via QDRO.[2]

---

[2] Martin is correct that technically, a QDRO would not have been necessary to effectuate the transfer of an interest in an IRA because an IRA is not governed by ERISA. But some form of family court order would have been appropriate to ensure the beneficial tax treatment of the IRA.

The bankruptcy court correctly concluded that Awve had a vested property interest in a portion of Martin's retirement account. Pursuant to *Brown*, the bankruptcy court could have denied Awve's motion for relief from the automatic stay as moot, because the asset she sought was not part of the bankruptcy estate. But the approach taken by the bankruptcy court makes sense, in light of the divorce court's comment that it regarded Awve's claim to be subject to the automatic stay. The bankruptcy court did not abuse its discretion in granting Awve's motion for relief from the automatic stay to allow her to pursue her rights in the divorce court.

**B. Order dismissing case**

The bankruptcy court thought that the point of Martin's bankruptcy petition was to avoid Awve's attempt to acquire her share of Martin's retirement account. So after granting Awve's motion for relief from the automatic stay, the bankruptcy court found that the petition was not brought in good faith in the first place, and that further work on Martin's chapter 13 plan was pointless. It seems doubtful that Martin would seek confirmation of a chapter 13 plan unless Awve's claim to her interest in the retirement account were discharged, because in his briefs to this court, the only reason Martin gives for wanting to re-open his bankruptcy is to re-argue Awve's motion for relief from the automatic stay.

But Martin contends that the bankruptcy court did not have the authority to dismiss the petition *sua sponte* without notice and a hearing. Further proceedings in the bankruptcy court may be a pointless formality because the stay issue has been correctly and definitively decided (absent further appeals), but the court concludes that Martin is correct about the dismissal.

It is well established that due process considerations apply in bankruptcy proceedings. *Matter of Boomgarden*, 780 F.2d 657, 661 (7th Cir. 1985) ("In bankruptcy proceedings, both debtors and creditors have a constitutional right to be heard on their claims, and 'the denial of that right to them [is] the denial of due process which is never harmless error.'" (quoting *Republic Nat'l Bank v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955))). Accordingly, under the bankruptcy code, bankruptcy courts may dismiss chapter 13 petitions for cause only "on request of a party in interest or the United States trustee and after notice and a hearing." 11 U.S.C. § 1307(c). "After notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances," but the court may act "without an actual hearing if such notice is given properly and if—(i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act." *Id.* § 102(1).

Here, as discussed, the bankruptcy court dismissed Martin's case pursuant to *In re Schaitz*, 913 F.2d 452 (7th Cir. 1990). In *Schaitz*, the Seventh Circuit held that debtors must propose chapter 13 plans in "good faith," that is, the plan must reflect "a sincere effort at repayment." 913 F.2d at 453 (citations and internal quotation marks omitted). With *Schaitz* and 11 U.S.C. § 1325(a)(3) in mind, the bankruptcy court dismissed Martin's case for lack of good faith. *See* Dkt. 3-1, at 5 ("I'm also dismissing the case as having been filed for a lack of good faith per *In re Schaitz*, the Seventh Circuit's case, which indicates that to be filed in good faith, a case must be an effort to pay creditors. This clearly is a case in which the debtor is seeking to avoid paying Ms. Awve, and it is not a case in which it was directed to the general payment of creditors.").

9

Regardless of its reasons, the bankruptcy court dismissed Martin's case *sua sponte* and without providing advance notice or a hearing dedicated to the dismissal. The bankruptcy court did not explain why it did not need to take evidence about whether Martin would seek confirmation of a plain involving his other debts. The bankruptcy court appears to have violated § 1307(c). *See In re Muessel*, 292 B.R. 712, 717 (B.A.P. 1st Cir. 2003) ("[B]oth the Bankruptcy Code and Bankruptcy Rules require prior notice to the debtor of any hearing, accompanied by a motion or order to show cause specifying the reasons for dismissal, before dismissal may be considered. Even in the absence of the statutory requirements for notice, fundamental concepts of procedural due process would require notice to the Debtor and an opportunity to be heard on the bankruptcy court's reasons for dismissal.").

Awve implicitly concedes that the dismissal does not square with the bankruptcy code, contending instead that the bankruptcy court exercised its inherent authority when it dismissed Martin's case. But Awve has not identified any case law holding that the bankruptcy court had the inherent authority to dismiss the case, without affording Martin notice or the opportunity to be heard. Rather, the one case that Awve cites concerns a *district* court's inherent authority to dismiss a case, pursuant to "certain inherent powers that allow it to manage and control the litigation proceeding before it." *Moser v. Universal Eng'g Corp.*, 11 F.3d 720, 723 (7th Cir. 1993). But this case did not discuss a *bankruptcy* court's inherent authority to dismiss cases *sua sponte*.

> A bankruptcy court has statutory authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. And it may also possess inherent power to sanction abusive litigation practices. But in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions.

10

*Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (internal citations and quotation marks omitted). Unlike district courts, which have the inherent authority to act beyond the express allowances of the Federal Rules of Civil Procedure, bankruptcy courts do not have the authority to act beyond the Bankruptcy Code. *Id.* ("We have long held that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." (citations and internal quotation marks omitted)). True, bankruptcy courts possess the authority to dismiss adversary proceedings *sua sponte* for failure to prosecute, but that is only because Rule 7041 incorporates Fed. R. Civ. P. 41 in adversary proceedings. Fed. R. Bankr. P. 7041; *see also Heartland Mem'l Hosp. LLC v. Gupta*, 461 B.R. 746, 751 (N.D. Ind. 2011). This was not an adversary proceeding.

Neither the notice nor the hearing requirement is rigid. *See In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009). But § 1307(c) and due process require *some* notice before dismissal. *Id.* ("If it was the court's intent to rule on the motion without conducting any sort of hearing and within a time period shorter than the one specified by Rule 2002(a)(4), then Bartle deserved to be apprised of the court's intent so that he could file a written response and, if he believed that a hearing was necessary, to make the case for such a hearing."). At the January 4, 2016, hearing, the bankruptcy court dismissed Martin's case immediately after it granted Awve's motion for relief from the automatic stay. Dkt. 3-1, at 5. Based on the record, it does not appear that the bankruptcy court gave the parties any indication that it was prepared to dispose of the entire case at the January 4 hearing. No notice is not sufficient. *Kelly*, 392 B.R. at 755-76 ("Although the parties received notice of the hearing at which the bankruptcy court announced its intent to dismiss the case, the hearing notice stated that hearing's purpose was for the consideration of the 'application by the trustee to employ Freund Law

Office as special counsel.' . . . Therefore, the decision of the bankruptcy court to dismiss this case will be reversed and remanded for further consideration consistent with his opinion.").

The bankruptcy court committed an error of law by dismissing the petition without giving Martin an opportunity to be heard on the dismissal. The court will remand this case for further proceedings consistent with this order. On remand, the bankruptcy court should also address the apparent tension between its oral order dismissing the case for lack of good cause and its written order dismissing the case for failure to prosecute. But for purposes of utter clarity, the bankruptcy court need not give Martin any further opportunity to be heard on Awve's motion for relief from the automatic stay.

ORDER

IT IS ORDERED that:

1. The final decision of the United States Bankruptcy Court for the Western District of Wisconsin granting appellee Jeanne Awve relief from the automatic stay is AFFIRMED.

2. The final decision of the United States Bankruptcy Court for the Western District of Wisconsin dismissing case no. 15-12504 is REVERSED. This case is REMANDED for further proceedings consistent with this order. Except as it would apply to relief already granted, the automatic stay under 11 U.S.C. § 362 will be reinstated pending the result of further proceedings.

Entered September 28, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge